IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROMANUS MILES,<br>　　　　Plaintiff,<br><br>　　v.<br><br>W. CURRY, *et al.,*<br>　　　　Defendants. | Civil No. 2:21-cv-03257-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                   **March 9, 2022**

Plaintiff Romanus Miles, proceeding *pro se*, is currently detained awaiting trial. He initiated the present action pursuant to 42 U.S.C. § 1983, alleging constitutional violations related to his pretrial detainment by the Commissioner of the Philadelphia Department of Prisons Blanche Carney, the Mayor of Philadelphia James Kenney, the Warden of Curran-Fromhold Correctional Facility (CFCF), Nancy Gianetto, and Corrections Officer W. Curry. Complaint at 1, 2-3. ECF No. 1. Defendants Carney and Kenney have moved to dismiss the complaint for failure to state a claim. Motion to Dismiss ("MTD"), ECF No. 16. For the reasons set forth below, the Court grants the motion.

**I.      FACTUAL BACKGROUND[1]**

Plaintiff is a pretrial detainee presently held at CFCF. Complaint at 2, 4. His incarceration began on July 28, 2020. *Id.* at 12.

---

[1] The following summary is based on the factual allegations contained in the Complaint. For purposes of deciding this motion, the allegations are presumed to be true and are considered in the light most favorable to Plaintiff. The Court has construed Plaintiff's *pro se* complaint liberally. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Att'y Gen.*, 665 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

Plaintiff was detained during the COVID-19 pandemic. *Id.* In response to the pandemic, CFCF began a quarantine to limit the spread of the virus among its population. *Id.* Plaintiff alleges that his rights have been violated during quarantine: he alleges that he was denied out of cell time and access to the phone, showers, cleaning supplies, clean linens, and the library. *Id.* Plaintiff also contends he was removed from his cell block due to his refusal to accept a COVID-19 vaccination and was involuntarily given that vaccination at a later date. *Id*. at 16.

As such, Plaintiff asserts that his constitutional rights have been violated. *Id.* at 3. He brings a First Amendment Freedom of Religion claim, an Eight Amendment Cruel and Unusual Punishment claim, and a Fourteenth Amendment Due Process claim.[2] *Id.*

## II.   STANDARD OF REVIEW

A complaint may be dismissed for failing to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain factual allegations that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Facial plausibility means that when accepting the complaint's factual allegations as true and in the light most favorable to the plaintiff, a "reasonable inference" may be drawn that "the defendant is liable for the misconduct alleged." *Id.*

The Third Circuit has set forth a three-step framework for determining the sufficiency of a complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court should take "note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*,

---

[2] The allegations regarding Plaintiff's conditions of confinement fall under the Due Process Clause of the 14th Amendment rather than the 8th Amendment due to Plaintiff's status of a pretrial detainee. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Hubbard v. Taylor*, 399 F.3d 150 (3d Cir. 2005).

556 U.S. at 678–79). Second, the court must "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 678–79).

### III. DISCUSSION

Plaintiff cites to 42 U.S.C. § 1983 as the basis for his claims against Defendants. Complaint at 3. To successfully assert a § 1983 claim, a plaintiff must show "a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008); *see also West v. Atkins,* 487 U.S. 42, 48 (1988). The claims against each defendant are addressed in turn below.

#### (A) Defendant Blanche Carney

Plaintiff first brings official and individual capacity claims against the Commissioner of the Philadelphia Department of Prisons, Blanche Carney. Complaint at 3-4. He claims that Carney "oversees and controls the day-to-day operations of CFCF" and although she was "made aware" of Plaintiff's rights being violated she "failed to correct and/or protect Plaintiff's rights that were violated and ensure [his] safety." *Id.* at 19, 25.

The official capacity claim against Carney must be dismissed. Claims against City officials named in their official capacity are indistinguishable from claims against the

City.[3] *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, official capacity claims against Carney are redundant of claims against the City of Philadelphia.

A municipality, such as Philadelphia, may be held liable for a constitutional violation only if the plaintiff is able to establish a causal connection between the violation and the municipality's policy or custom. *See Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). There are two ways for such claims to proceed. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). The first is when plaintiffs point to "an unconstitutional policy or custom of the municipality" that led to their injuries. *Id.* The other way is when the plaintiffs' injuries were "caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Id.* (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)).

If plaintiffs allege an unconstitutional "policy," then they must identify "an official proclamation, policy, or edict by a decisionmaker possessing final authority." *Id.* An unconstitutional custom may be shown where there is a "given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* In comparison, for a failure or inadequacy claim, plaintiffs must demonstrate that the "failure or inadequacy amount[ed] to deliberate indifference on the part of the municipality." *Id.* Here, Plaintiff alleges no official

---

[3] Plaintiff's Complaint does not specifically list the City of Philadelphia as a Defendant; however, the Court can infer from a generous interpretation that Plaintiff's § 1983 claim considers municipal liability against the City.

4

unconstitutional policy or practice, no pattern of behavior, and no specific deficiency in training or inadequacy of supervision for which the City could be held liable. [4]

As to the individual capacity claims, Carney argues that the Complaint lacks any allegation of her personal involvement and must be dismissed. MTD at 7-8. "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (alteration in original) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 2008)); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence,'" (quoting *Rode*, 845 F.2d at 1207)); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

There are two general methods of establishing personal involvement for purposes of § 1983 liability. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). The first method is if the supervisors "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). The second method is if the supervisor "with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the]

---

[4] "We consider allegations of failure to train, supervise, and discipline together because they fall under the same species of municipal liability." *Estate of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019).

constitutional harm." *Id.* (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720,725 (3d Cir. 1989)).

None of the allegations in the Complaint state a claim against Carney under the first method. The Complaint is devoid of allegations that Carney participated in violating Plaintiff's rights or directed others to do so. Plaintiff alleges that Carney "was made aware of the Plaintiff's rights being violated because Plaintiff informed these matters to the Deputy Commissioner." Complaint at 19. Plaintiff argues that "it is logical" that the Deputy Commissioner "informed Defendant Carney of these matters," but assumptions are insufficient and Plaintiff fails to provide any specifics to the allegations that Carney had knowledge of Plaintiff's grievances, acquiesced to any subordinate's violations, or personally directed any action that violated Plaintiff's civil rights. That leaves the second method of supervisory liability. *Id.* The only policy that Plaintiff specifically identifies that Carney participated in was the order regarding COVID-19 vaccinations – i.e., that refusing the vaccination would result in Plaintiff "being moved to PICC county prison" and receiving "even less time out of the cell." *Id.* at 16. He avers that he was told this order came "from the Commissioner'" *Id.* at 17. However, Plaintiff has not alleged that Carney acted with deliberate indifference to the consequences of that or any other policy.

Accordingly, the claims against Carney will be dismissed. Plaintiff will be granted the opportunity to file an amended complaint if he is able to cure the deficiencies identified by the Court.

### (B) Defendant James Kenney

Next, Plaintiff claims that the Mayor of Philadelphia James Kenney as "the top official and overseer of the Philadelphia Department of Prisons" who "approves and disapproves Defendant Carney's commands, orders, policies, rules, and regulations" allowed and endorsed civil rights violations in both his official and individual capacities. *Id.* at 20. Plaintiff claims that Kenney "failed to correct and/or protect Plaintiff's rights that were violated and ensure [his] safety." *Id.* at 26. Like the official capacity claim against Carney, the official capacity claim against Kenney must be dismissed because it is also redundant to claims against the City of Philadelphia. *See Helm v. Palo,* 2015 U.S. Dist. LEXIS 12375, at *26 (E.D. Pa. February 3, 2015) ("When plaintiff sued defendant in his official capacity . . . they actually sued his employer. . . [t]hat is the legal import of suing a[n] official, in his or her official capacity.")

Plaintiff alleges Kenney's individual liability is based upon his reporting relationship to Carney in that he approves or disproves all her actions. Complaint at 20. He alleges Kenney was "definitely aware" of the alleged civil rights violations as reported to him via Carney and various media outlets. *Id.* However, Plaintiff fails to provide factual specificity (such as the time, place or manner) of Kenney's alleged knowledge of Carney's reports or Plaintiff's grievances, acquiescence to Carney's alleged violations, or Kenney's personal involvement in or direction of any action that violated Plaintiff's civil rights.

Additionally, Plaintiff does not specifically identify any policy that Kenney participated in developing and has not alleged that Kenney acted with "deliberate indifference to the consequences" of any such policy. Accordingly, the claims against Kenney will be dismissed but Plaintiff will be granted the opportunity to amend.

**(C) Defendant Nancy Gianetto**

Next, Plaintiff claims that Defendant Gianetto as the Warden at CFCF "directly controls the day-to-day operations" of the prison and "allows and fails to correct the abuse or deliberate violations of Plaintiff's rights" even though her "supervisory authority gives her the power to stop, change and rectify." *Id.* at 18. Defendant Gianetto has not accepted service, responded to the Complaint or entered an appearance in this case. Process Receipt and Return, ECF No. 10. Nevertheless, the Court finds it prudent to address the claims against Gianetto *sua sponte* and dismiss them with leave to amend.[5] As noted above, the Third Circuit has consistently held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). As with the previous defendants, Plaintiff has not claimed that Gianetto was personally involved in the conduct or directed any of the action that forms the basis of his Complaint; he seems to have named Gianetto solely based on her position as Warden at CFCF. *See Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010). Standing alone, that does not pass muster.

Although this claim must be dismissed, Plaintiff will again be afforded the opportunity to cure the deficiencies described herein.

### (D) Defendant W. Curry

Plaintiff next claims that Defendant Curry, a Corrections Officer at CFCF, violated his civil rights. Specifically, Plaintiff claims that Curry violated his rights to "shower, communicate with [his] family, friends, lawyer and [have] out of cell time for recreation." Complaint at 14. Plaintiff further alleges that Curry acted with deliberate indifference. *Id*. at

---

[5] *See* 28 U.S. Code § 1915A.

25. Defendant Curry also has not accepted service, responded to the complaint, or entered an appearance in this case. Process Receipt and Return, ECF No. 10. Nevertheless, the Court finds it prudent to also address the claims against Curry *sua sponte* and dismiss them with leave to amend.[6]

A claim regarding prison conditions "does not rise to the level of an Eighth Amendment violation unless: (1) the prison official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so thereby exposing the inmate to a substantial risk of serious damage to her future health." *Chavarriaga v. N.J. Dept. of Corr.,* 806 F.3d 210, 226 (3d. Cir. 2015).

A prison official is deliberately indifferent if the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 229. A plaintiff "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendants must have known about the risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010). The plaintiff must show that the officials were "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and that they also drew the inference." *Id*. (quotation and alteration marks omitted). "It is not enough merely to find that a reasonable person would have known, or that the defendant should have known." *Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994).

Here, we need not determine whether Plaintiff was deprived of "the minimal civilized measure of life's necessities" because we cannot conclude that Curry was deliberately

---

[6] *See* 28 U.S. Code § 1915A.

indifferent. Although Plaintiff noted that "Curry's workers have approached an individual in a physical manner," he has not shown the risk of harm to be longstanding, pervasive, or expressly noted by prison officials in the past such that Curry must have known about the risk. Complaint App. A at D-2-3 (19); *see also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010).

Reading Plaintiff's complaint liberally, it seems he is also claiming that Curry's actions were in retaliation for Plaintiff's submissions of grievances and reporting of violations to Curry's superiors. Complaint at 14. To establish a § 1983 prima facie case of retaliation, Plaintiff must demonstrate: "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Thompson v. Pitkins*, 514 F. App'x 88, 90 (3d Cir. 2013) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)); *see also Moore v. City of Phila.*, 461 F.3d 331, 341-42 (3d Cir. 2006). The burden is on Plaintiff to show that "the constitutionally protected conduct was a substantial motivating factor in Defendants' conduct." *Verbanik v. Harlow*, 512 F. App'x 120, 122-23 (3d Cir. 2013) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

Here, the first prong of the § 1983 retaliation test is not in dispute because Plaintiff engaged in constitutionally protected conduct by filing this lawsuit and submitting grievances at CFCF. Complaint at 1, 6-8. However, Plaintiff has not sufficiently met the second prong of his burden - that Curry took adverse action sufficient to deny Plaintiff from exercising his constitutional rights, or the third prong - that there is a casual link between Curry's alleged

Case 2:21-cv-03257-JMG Document 27 Filed 03/09/22 Page 11 of 12

conduct and Plaintiff's exercise of his constitutional rights. This claim must be dismissed but Plaintiff will again be afforded the opportunity to cure the deficiencies described herein.

### (E) All Defendants - First Amendment Claim

Finally, Plaintiff claims all Defendants violated his First Amendment Right to Freedom of Religion. Complaint at 3, 16. Plaintiff contends that he was removed from his cell block due to his refusal to accept a COVID-19 vaccination and eventually, despite his refusal, involuntarily given that vaccination. *Id*. at 16.

A "threshold" requirement for asserting a free exercise claim is that the plaintiff's alleged beliefs are "both sincerely held and religious in nature." *See, e.g.*, *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000); *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003); *Snider v. Pa. DOC,* 505 F. Supp. 3d 360, 424 (E.D. Pa. 2020). If they are, we must then apply the Supreme Court's four-factor test in *Turner v. Safley*, to determine whether the curtailment at issue is "reasonably related to penological interests." *See Turner v. Safley,* 482 U.S. 78, 89 (1987).

Under *Turner* it must be determined: (1) "whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is "an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003); also see *Snider v. Pa. DOC*, 505 F. Supp. 3d 360, 423 (M.D. Pa. 2020).

The only factual allegation relevant to this claim is Plaintiff's assertion that he refused to be vaccinated because "God is in control and the COVID plague is one of the signs of the end of time." *Id.* at 16. He does not sufficiently allege that he could not be vaccinated due to "a sincerely held belief" that is "religious in nature." He states, in a conclusory fashion, that he was "involuntarily vaccinated" and "refusing the vaccination for whatever reason would result in plaintiff being moved to PICC county prison . . . and even less time out of the cell." *Id.* at 16-17. As such, Plaintiff has not plausibly stated a violation of his constitutional right to free exercise of religion. Even if Plaintiff had passed the threshold requirement it is likely his Complaint would not satisfy the *Turner* four factor test. Although this claim must be dismissed, Plaintiff will be afforded the opportunity to cure the deficiencies described above by filing an amended complaint.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's Complaint without prejudice to him filing an amended complaint. Plaintiff's Motion for Appointment of Counsel is denied without prejudice to Plaintiff renewing that motion if and when he files an amended complaint. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge